UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Theodore Wagner,<br><br>          Plaintiff,<br><br>vs.<br><br><br>Officer Monica Hampton; Officer Ruth Daugherty; Officer Donald Simmons; La Toshia Spearing; PayComputerMonitoring.com; all in their Official and Individual Capacity,<br><br>          Defendants. | Civil Action No.: 2:13-2406-GRA-WWD<br><br><br><br><br>**REPORT AND RECOMMENDATION** |

Plaintiff, Theodore Wagner ("Wagner"), files this action against Defendants Officer Monica Hampton, Officer Ruth Daugherty, Officer Donald Simmons, La Toshia Spearing, and PayComputerMonitoring.com, all in their official and individual capacities. Plaintiff is proceeding *pro se* and *in forma pauperis*, pursuant to 28 U.S.C. § 1915. Under the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review such complaints for relief and submit findings and recommendations to the Court. Having reviewed the Complaint in accordance with applicable law, the undersigned recommends that it be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a plausible claim on which relief may be granted by the Court. The undersigned further recommends that Wagner's Motion for a TRO should be denied.

## BACKGROUND

Wagner is a frequent filer with a long history of matters before this Court, including, *United States v. Wagner,* C/A No. 2:02-cr-181-PMD, *United States v. Wagner,* C/A No. 2:02-cr-181-PMD, *Wagner v. United States,* C/A No. 2:05-404-PMD, *Wagner v. Ozmint*, C/A No. 3:05-372-GRA, *Wagner v. Crews et al.*, 3:05-1100-GRA, *Wagner et al. v. Charleston County Jail et al.*, 3:05-1435-GRA, *Wagner v. United States*, 3:06-2838-PMD, *Wagner v. State of South Carolina et al.*, 3:07-2698-GRA, *Wagner v. United States*, 3:08-2176-GRA, *Wagner v. United States*, 3:08-3235-GRA, and *Wagner v. Obama et al*, 3:13-708-GRA.

On April 9, 2002, Wagner was indicted for four counts of production of child pornography, and one count of possession of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2252A(a)(5)(b). On August 14, 2002, Wagner pleaded guilty before the Honorable Patrick Michael Duffy to one count of production of child pornography and one count of possession of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2252A(a)(5) (b). *See United States v. Wagner,* C/A No. 2:02-cr-181-PMD at ECF No. 36. Against the advice of his counsel, Wagner sought to withdraw his guilty plea, but the court denied the motion and sentenced him to 151 months imprisonment and to a term of supervised release of three years to run concurrently on each count.[1] In addition to the standard terms of supervised release, the Court imposed several special conditions, including an instruction that Wagner "shall not possess, procure, purchase or otherwise obtain access to any form of computer network, bulletin board, Internet, or

---

[1] Approximately two weeks after his guilty plea in federal court, Wagner pleaded guilty in state court to two counts of criminal sexual conduct with a minor, based on the same conduct at issue in the federal charge, and received a ten year sentence to run concurrent with his federal sentence.

exchange format involving computers unless specifically approved by the Court or the US Probation Officer."

Wagner appealed his conviction and sentence to the Fourth Circuit Court of Appeals, and alleged prosecutorial misconduct. The Fourth Circuit affirmed the district court's rulings and rejected Wagner's allegations of prosecutorial misconduct as "not supported by the record." *United States v. Wagner*, 88 F. App'x 593, 595 (4th Cir. 2004). Wagner then appealed to the United States Supreme Court, which declined to grant certiorari. *Wagner v. United States*, 543 U.S. 939, 125 S. Ct. 339, 160 L. Ed. 2d 247 (2004).

Wagner filed a habeas petition pursuant to 28 U.S.C. § 2255 on February 8, 2005, and on June 22, 2005, alleging (1) that he received ineffective assistance of counsel because his attorney had a "change of loyalty;" (2) that the prosecution committed "misconduct and felonious acts;" (3) that the standard applied by the court in denying his request to withdraw his guilty plea was unconstitutional; and (4) that the FBI violated his right to due process by instructing state detectives to get a warrant using "known perjured statements." Judge Duffy granted the government's motion to dismiss the habeas petition, observing that "the evidence of Wagner's guilt was overwhelming," and noting that "[t]he Government had statements from multiple victims, as well as eight videotapes in which Wagner is either engaging in sexual acts with minors or providing minors with alcohol and marijuana and subsequently videotaping them engaged in sexual acts with each other." *Wagner v. United States*, 377 F. Supp. 2d 505, 510 (D.S.C. 2005). The Fourth Circuit denied Wagner's request for a certificate of appealability and dismissed his appeal. *United States v. Wagner*, 146 F. App'x 701 (4th

Cir. 2005). Wagner completed the confinement portion of his sentence in 2013 and began supervised release.

Wagner appears to be trying to relitigate his guilt or innocence on the underlying charges by suing anyone who had anything to do with his conviction or the consequences thereof. Most of his lawsuits against various state and federal officials share common factual claims, including allegations that the search warrant that led to his arrest was based on "perjured" testimony by the victim who first notified police of Wagner's conduct, that this victim was, in fact, his wife and was at least 20 years old at the time that one of the pornographic videos was made, that the investigators and the Assistant United States Attorney working on the case were aware of these facts but conspired to conceal them, that the attorneys appointed to represent Wagner switched sides to support the government, and that a large number of government officials ranging from prison staff to Judge Duffy and President Obama are participating in an ongoing conspiracy to suppress Wagner's First Amendment right to petition the government for redress of his grievances.

To the host of government officials allegedly conspiring against him, Wagner now adds his probation officer (Defendant Simmons), his probation officer's supervisor (Defendant Daugherty), a cyber-crime specialist for the U.S. Probation Office for the District of South Carolina (Defendant Hampton), a website that provides computer monitoring software (Defendant Paycomputermonitoring.com), and a woman whose role cannot be completely determined from Wagner's Complaint (Defendant Spearing).

Wagner filed his Complaint (ECF No. 1) in the instant action on September 5, 2013, and submitted with his Complaint a "Challenge of laws made in violation of the

U.S. Constitution as presented in USA v. Butler, 297 US 1@62", ECF No. 1-1 (hereinafter "Challenge of Laws").  For the most part, Wagner's allegations rehash the claims he advanced in the prior actions listed above.  He alleges that the Defendants in this case, along with others, are "complicit or enabling an ongoing oppression of civil rights" in violation of the United States Constitution and their respective oaths of office.  Compl. ECF No. 1, at 1.[2]  Wagner claims that "[o]n or about February 26th 2002" (a couple of days before Wagner was arrested), Detective William Crews and Special Agent Cynthia McCants conspired to "bear false witness in court" that one of Wagner's victims "was a child" and was Wagner's "step daughter." *Id.*  Detective Crews and Special Agent McCants were not named as defendants in the case at hand, but Wagner has unsuccessfully sued them before for their role in his conviction.  *See Wagner v. Crews*, CIVA 3:05CV1100 GRAJ, 2007 WL 691906 (D.S.C. Mar. 1, 2007).  Wagner further contends that since his arrest and conviction "many others including officers of the court have used their authority to facilitate the conspiracy" and "to cover up the truth" that this victim was actually Wagner's wife and was an adult who "planned and facilitated the making of her tapes."  Compl. at 1.

According to Wagner, "the commanded protection of the NINTH AMENDMENT protected the unalienable right of [his alleged wife] and her friends from government intrusion," and protected Wagner's right to have "the Truth, the whole Truth, and nothing but the Truth be spoken about me, most especially by my government." *Id.*  He alleges that "[a]ll those named and unnamed are complicit or enabling the facilitation of this ongoing conspiracy with deliberate indifference to the harm and opposition of civil rights," and that "each person named has willfully been complicit or enabled this

---

[2] Wagner's Complaint does not contain paragraph numbers, so it is cited by page number.

ongoing conspiracy against civil rights . . . to cover up the truth and aid in the facilitation of the Malicious Prosecution that started in February 2002." *Id.* at 2.  Wagner also contends that the United States Probation Office has "oppress[ed]" his "right to a redress of grievance" by oppressing his right to serve his "wife"/victim with divorce papers.  *Id.; see also* Challenge of Laws at 1 (alleging that Defendants Simmons and Daugherty "oppress[ed]" his "attempts [to] locate [the "wife"/victim] to put the Truth, the whole Truth, and nothing but the Truth on the record").[3]

Wagner's Complaint and Challenge of Laws fail to identify the role of Defendant La Toshia Spearing, but claim that she tried to "compel" Wagner "to say [he] had sexual relations with [his "wife"/victim] when [he] did not," and that she "has been complicit or enabling the facilitation of this conspiracy by availing herself to this lie for monetary gain."  *Id.* at 2, Challenge of Laws at 1.

Finally, Wagner objects to the fact that he is currently prohibited from using social media, and claims that this limitation violates the First Amendment.  Wagner alleges that, "[i]n an effort to end the ongoing oppression of the Right of Redress of Grievances of the First Amendment," he purchased the domain "Theodorewagner.com," but laments the fact that he "cannot use social media, one of the most powerful tools at [his] disposal" to "peaceably assemble others" who might aid him in his cause.  Compl. at 2.  Wagner adds that Officer Hampton and Defendant PayComputerMonitoring.com "have conspired to place viruses into [his] computer and remove the virus protection software

---

[3]      Wagner commends the Defendants for being courteous and respectful even while refusing to help him "defend the integrity of the FIRST AMENDMENT."  Compl. at 3.

that came with the computer with a deliberate indifference to the opposition and harm it does cause." *Id.* at 3. He asks this Court for an award of $2 million from each defendant in their official and individual capacities, and for "redress" of his constitutional challenges. (*Id.*)

Wagner's summons and complaint appear to have been served on the National Child Protection Training Center (NCPTC) instead of Defendant Paycomputermonitoring.com. Wagner's Complaint does not make any allegations against NCPTC, and on December 16, 2013, NCPTC filed a motion to quash the summons, or, in the alternative, to dismiss, ECF No. 30. The undersigned has reviewed NCPTC's motion and memorandum and agrees that the summons is subject to being quashed. Nevertheless, since the undersigned concludes that Wagner's Complaint should be dismissed in its entirety against all Defendants for failure to state a claim, there is no need for the Court to quash the summons. On January 6, 2014, Defendant La Toshia Spearing filed a motion to dismiss for failure to state a claim, ECF No. 38. On January 21, 2014, Defendants Hampton, Simmons, and Daugherty filed a motion to dismiss, or in the alternative, for summary judgment, ECF No. 47.

## **STANDARD OF REVIEW**

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975). The

mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.  Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  To show that the plaintiff is "entitled to relief," the complaint must provide "more than labels and conclusions"—"a formulaic recitation of the elements of a cause of action will not do."  *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.  As the Supreme Court explained in *Iqbal,* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  129 S.Ct. at 1950.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 1949 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 129

S.Ct. at 1949.  The facts alleged "must be enough to raise a right to relief above the speculative level," *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955, and "must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 256 (4th Cir.2009) (quoting *Iqbal,* 129 S.Ct. at 1952).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).  "This basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 550 U.S. at 558, 127 S.Ct. 1955 (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, pp. 235–36 (3d ed. 2005)).

In evaluating a motion to dismiss under Rule 12(b)(6), the Court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet,* 591 F.3d at 255.  This rule is "inapplicable to legal conclusions." *Iqbal,* 129 S.Ct. at 1949.  Moreover, "elements of a cause of action" and "bare assertions" do not qualify as well-pled facts, and the Court "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet,* 591 F.3d at 253, 255 (quotation marks and citations omitted).  The Court may take judicial notice of matters of public record and may also "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Def. v. Trimble*

*Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir.2007) (quotation marks and citations omitted).

## DISCUSSION

Wagner fails to identify any specific statute that provides him with a cause of action[4] and does not organize his allegations into any traditionally identifiable claims. He does, however, invoke several provisions of the United States Constitution and cites a number of seminal cases, such as *Marbury v. Madison*.  Accordingly, the undersigned is treating the above-captioned case as a *Bivens* action.  In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights.  "*Bivens* is the case establishing, as a general proposition, that victims of a constitutional violation perpetrated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits."  *Wright v. Park,* 5 F.3d 586, 589 n. 4 (1st Cir.1993), which *cites, inter alia, Carlson v. Green,* 446 U.S. 14, 18, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (restating *Bivens* rule).

A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983: federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of *state* law.  *See Harlow v. Fitzgerald,* 457 U.S. 800, 814–20 & n. 30, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  *Harlow,* which is often cited for the principle of the qualified

---

[4] Wagner cites Title 18 U.S.C. § 241 in his complaint, which is a criminal statute that provides no private cause of action.  *See, e.g., Wagner v. United States*, 377 F.Supp.2d 505, 510 (D.S.C. 2005).

immunity of state officials for acts within the scope of their employment, was brought against a federal official.  In footnote 30 of the opinion in *Harlow,* the Supreme Court stated that *Harlow* was applicable to state officials sued under 42 U.S.C. § 1983.  In other words, case law involving § 1983 claims is applicable in *Bivens* actions and *vice versa.  See Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Bolin v. Story,* 225 F.3d 1234, 1241–42 (11th Cir.2000); and *Campbell v. Civil Air Patrol,* 131 F. Supp. 2d 1303, 1310 n. 8 (M.D.Ala.2001) (noting that, since courts have expanded the *Bivens* remedy, usually used for a Fourth Amendment violation, to allow direct action under First and Fifth Amendments, "the court shall refer interchangeably to cases" decided under both § 1983 and *Bivens* ).

A "*Bivens* claim for damages . . . requires proof of two elements: (1) a violation of [Plaintiff's] constitutional rights, (2) by agents acting under color of federal law." *Goldstein v. Moatz,* 364 F.3d 205, 210 (4th Cir.2004) (citing *Bivens,* 403 U .S. at 389). Neither the Court of Appeals for the Fourth Circuit nor the Supreme Court has decided whether *Bivens* liability can be imposed upon a private individual.  *See Holly v. Scott,* 434 F.3d 287, 291 (4th Cir. 2006).

## ANALYSIS OF WAGNER'S CLAIMS

Having liberally construed Wagner's Complaint in light of his *pro se* status, the undersigned organizes and summarizes his grievances against the Defendants as follows: (1) that the Defendants are engaged in an ongoing conspiracy to oppress Wagner's civil rights and prevent him from exercising his First Amendment Right to petition the government for redress of his grievances, specifically his efforts to show that the search of his home and his conviction for production of child pornography and

possession of child pornography were the result of malicious prosecution because they were based upon information that was false and that the government knew was false; (2) that the restrictions that U.S. Probation and Defendants Simmons, Hampton, and Daugherty have placed on Wagner's ability to use social media violate the First Amendment; (3) that Defendant La Toshia Spearing has participated in the conspiracy described above by trying to "compel" Wagner "to say [he] had sexual relations with [his "wife"/victim] when [he] did not," and "by availing herself to this lie for monetary gain;" and (4) that Defendants Hampton and PayComputerMonitoring.com have conspired to place viruses on his computer and to remove the virus protection software that came with the computer.

### 1.  **Malicious Prosecution/Conspiracy**

Wagner's first claim is essentially an allegation that his conviction was the result of malicious prosecution and the assertion that the Defendants charged with managing Wagner's supervised release are part of an ongoing conspiracy to participate in the malicious prosecution by enforcing conditions that make it difficult for him to challenge his conviction and clear his name.  These conditions allegedly include a prohibition on his use of social media, the requirement that he install software that allows U.S. Probation to monitor his computer, and a prohibition on him contacting his victims. Although Wagner fails to allege facts showing that the Defendants[5] had any role in securing his conviction, the undersigned will treat this claim as one for malicious prosecution.  *See Heck v. Humphrey,* 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d

---

[5] Wagner may contend that Defendant Spearing had a role in securing his conviction, but as noted above, he has not alleged facts sufficient for the undersigned to determine what her role was.

383 (1994) ("The common-law cause of action for malicious prosecution provides the closest analogy to claims of the type considered here because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process"); *Brooks v. City of Winston–Salem, N.C.,* 85 F.3d 178, 182 (4th Cir.1996) ("[A]llegations that an arrest made pursuant to a warrant was not supported by probable cause . . . are analogous to the common-law tort of malicious prosecution"); *Meadows v. Feldman,* No. 7:03–CV–00101–SGW, 2003 WL 24180193, at *3 (W.D.Va. Dec.16, 2003) (unpublished) ("To the extent that Meadows alleges . . . [an arrest] pursuant to a warrant not supported by probable cause, the court treats Meadows' false arrest claim as a malicious prosecution claim founded on a Fourth Amendment seizure").

If the Fourth Amendment to the United States Constitution encompasses a malicious prosecution claim, then it may be cognizable under § 1983/*Bivens.  See Wallace v. Kato,* 549 U.S. 384, 390 n. 2, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). Be that as it may, one element of a malicious prosecution claim is that the criminal proceedings have terminated in the plaintiff's favor.  *Id.* at 392 (citing *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)); *Brooks v. City of Winston–Salem,* 85 F.3d 178 (4th Cir.1996).  In *Heck v. Humphrey,* the Supreme Court held that when a plaintiff seeks damages in a civil rights action, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  *Heck,* 512 U.S. at 487.  Plaintiff has not provided any facts to demonstrate that his federal

conviction has been invalidated.  Therefore, Plaintiff's claim for damages regarding his federal conviction and sentence is also barred by *Heck.  See Poston v. Shappert,* No. 06–8052, 2007 WL 1031695 (4th Cir. March 30, 2007) (§ 1983 and *Bivens* claims challenging underlying criminal conviction barred by *Heck* ); *Fottler v. United States,* 73 F.3d 1064, 1065 (10th Cir.1996) (federal prisoner's challenge to the means used to arrest and convict him barred by *Heck* ); *Stephenson v. Reno,* 28 F.3d 26, 28 (5th Cir.1994) (federal prisoner seeking damages resulting from investigation, conviction and sentence could not bring a *Bivens* claim until prisoner's conviction was "declared invalid or otherwise impugned as set out in *Heck"*).  For this reason, Wagner's allegations regarding the Defendants' role in an ongoing conspiracy to facilitate malicious prosecution should be dismissed.

Moreover, to establish a civil conspiracy under § 1983 or in a *Bivens* action, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right.  *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).  Thus, an essential element for a claim of conspiracy to deprive a plaintiff of a constitutional right is an agreement to do so among the alleged co-conspirators.  *Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1006–07 (4th Cir. 1987).  Without a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy.  *Murdaugh Volkswagen, Inc. v. First Nat'l Bank*, 639 F.2d 1073, 1075–76 (4th Cir. 1981).  The plaintiff must allege facts showing that the defendants shared a "unity of purpose or a common design" to injure the plaintiff.  *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809–10 (1946).

When a complaint makes only conclusory allegations of a conspiracy and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint.  *See Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126–27 (9th Cir. 1989); *Cole v. Gray*, 638 F.2d 804, 811–12 (5th Cir. 1981). Reviewing the Complaint, the undersigned concludes that Plaintiff fails to allege any facts indicating that Defendants acted jointly to injure him, and his conclusory allegations are insufficient to state a claim upon which relief may be granted.  For this additional reason, Plaintiff's conspiracy claim should be dismissed.

### 2.  Restrictions of Wagner's Use of Social Media

As noted, a *Bivens* action is not an opportunity for a plaintiff to challenge the validity of a previously imposed sentence or term of supervised release, unless the conviction has been overturned or otherwise invalidated.  The computer restriction that Wagner is suing some of the Defendants for enforcing was ordered by the Court.  *See* C/A 2:02-cr-00181-PMD, ECF No. 57 ("[Wagner] shall not possess, procure, purchase or otherwise obtain access to any form of computer network, bulletin board, Internet, or exchange format involving computers unless specifically approved by the Court or the US Probation Officer.").  The Court's order strips Wagner of his right to use a computer on the internet during his three year term of supervised release, but allows U.S. Probation to restore some of Wagner's access as it sees fit.  This restriction is a part of Wagner's sentence, and allowing him to recover damages against probation officers for their enforcement of the restriction would "imply the invalidity of [Wagner's] conviction or sentence" in violation of *Heck.*

Moreover, to whatever extent the U.S. Probation Defendants are exercising discretion in determining how Wagner may use computers and the internet, they are protected by the doctrine of qualified immunity.  Qualified immunity protects government officials performing discretionary functions from suits for civil damages arising out of the exercise of their discretionary functions, provided that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir.1991) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The plaintiff's rights must be established so clearly that a "reasonable official would understand that what he is doing violates that right."  *Slattery,* 939 F.2d at 216 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  Accordingly, ruling on a defense of qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right."  *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992).

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation."  *Wilson v. Layne,* 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999); *see also Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir.2000).  Furthermore, the Supreme Court held that "[d]eciding the constitutional question before the qualified immunity question also promotes clarity

in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson,* 526 U.S. at 609.  If the court first determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir.1998); *see also Young v. City of Mount Rainier,* 238 F.3d 567, 577-78 (4th Cir.2001) (concluding that the complaint did not allege a constitutional violation, there was no need to consider the question of qualified immunity).

Limitations on a convicted sex offender's access to the internet or social media are valid provided that they are reasonably related to the individual's offense and his history and characteristics and are no more restrictive than necessary to serve the purposes of sentencing.  *See* 18 U.S.C. § 3583(d).  Numerous courts, including the Fourth Circuit, have upheld various restrictions on the use of computers, the internet, and social media by convicted sex offenders on supervised release.  *United States v. Miller*, 665 F.3d 114, 132 (5th Cir. 2011) (upholding a 25-year restriction on a defendant's use of the internet); *United States v. Loflin*, 318 F. App'x 212, 213 (4th Cir. 2009) (upholding a special condition of supervised release restricting a sex offender's use of a computer at work); *United States v. Granger*, 117 F. App'x 247, 248 (4th Cir. 2004) (upholding the requirement that "[t]he defendant shall not possess or use any computer which is connected or has the capacity to be connected to any network" as a condition of supervised release for a defendant "convicted of transporting and shipping images of child pornography."); *United States v. Rearden*, 349 F.3d 608, 619 (9th Cir. 2003) (upholding restrictions on use of the internet and possession of sexually explicit materials and noting that "a defendant's right to free speech may be abridged to

effectively address [his] sexual deviance problem." (citations and quotation marks omitted)); *see also Doe v. Prosecutor, Marion Cnty., Indiana*, 705 F.3d 694, 703 (7th Cir. 2013) ("[A] court could conceivably limit a defendant's Internet access if full access posed too high a risk of recidivism. The alternative to limited Internet access may be additional time in prison, which is surely more restrictive of speech than a limitation on electronics." (Citation omitted)). While the restrictions imposed must be reasonable in light of the offense, *see United States v. Smathers*, 351 F. App'x 801, 802 (4th Cir. 2009) (overturning a life-time computer ban where the defendant's crime did not involve a computer), by his own admission, Wagner has been permitted to use a computer, access the internet, purchase a website, and disseminate his views. The restriction on Wagner's use of social media and the requirement that he allow monitoring software to be installed on his computer do not unduly burden Wagner's First Amendment rights in light of the serious offenses for which he was convicted.[6]

Furthermore, the fact that the restrictions at issue may incidentally reduce Wagner's ability to rally the public to his cause and seek redress of his grievances does not render the restrictions unconstitutional. *See United States v. Wilinski*, 173 F. App'x 275, 277 (4th Cir. 2006) ("Although the right of access to the courts is fundamental, a district court may impose a condition of supervised release that restricts a defendant's exercise of constitutional rights when the condition is directly related to advancing the [defendant's] rehabilitation and to protecting the public from recidivism." (Citations and quotation marks omitted)). Setting aside Wagner's repeated assertion that his rights are

---

[6] Wagner also claims that U.S. Probation has prevented him from locating his "wife"/victim and from serving her with divorce papers; however, as the Defendants observe in the their motion to dismiss, Wagner also claims that he has successfully served his "wife"/victim by publication.

being "oppressed," which is a legal conclusion not a fact, Wagner has not alleged any facts that would give rise to a reasonable inference that the Defendants have violated his constitutional rights.

Even if Wagner had alleged facts sufficient to show that one of his constitutional rights was being violated, in order to recover damages, he would still have to show that the right was clearly established at the time of the violation and that a reasonable probation officer would know that enforcing the restriction would violate the right. The right of a convicted sex offender to use social media and be free from computer monitoring while on supervised release is anything but clearly established. Thus, even if the restrictions on Wagner were unconstitutional, he would not be entitled to recover damages against the probation officers he has sued.

### 3. Claims Against Defendant La Toshia Spearing

The undersigned cannot determine from Wagner's Complaint how Defendant Spearing is connected to the harm Wagner claims to have suffered. Wagner alleges that Defendant Spearing conspired to violate Wagner's constitutional rights by lying about Wagner's relationship with his "wife"/victim. As noted above, Wagner has not advanced facts sufficient to establish a cause of action for conspiracy and his allegations against Defendant Spearing fail to state a claim upon which relief can be granted.

### 4. Claims Against Defendants Hampton and PayComputerMonitoring.com

To the extent Wagner claims that Defendants Hampton and PayComputerMonitoring.com participated in malicious prosecution, or impermissibly limited his right to use social media, those claims must be dismissed for the reasons

previously discussed.  Wagner also appears to advance a property claim against Defendants Hampton and PayComputerMonitoring.com, alleging that they have "conspired to place viruses into my computer and remove the virus protection software that came with the computer with a deliberate indifference to the opposition and harm it does cause."  Wagner fails to provide any facts to support his claim that Defendants Hampton and PayComputerMonitoring.com are conspiring to put viruses on his computer.  Wagner's "Petition for a Temporary Restraining Order Until Answer of Federal Question," ECF No. 8, reflects Wagner's belief that the installation of the monitoring software forced him to remove the free anti-virus software that came with his computer.  Because he cannot afford the antivirus software that is compatible with the monitoring software, his computer is susceptible to viruses.  The undersigned notes that Wagner consented to "[p]articipate in a Computer/Internet Monitoring Program as directed by the US Probation Office" in order to obtain permission to use a computer and access the internet.  *See* C/A 2:02-cr-00181-PMD, ECF No.102-1.  As previously discussed, this is a valid condition of Wagner's supervised release.  Accordingly, Wagner's Complaint fails to state a claim against Defendants Hampton and PayComputerMonitoring.com that is plausible on its face and upon which relief can be granted.

For the reasons set forth above, the undersigned respectfully recommends that the District Court dismiss Wagner's Complaint in its entirety for failure state a claim upon which relief can be granted.

**WAGNER'S MOTION FOR A TRO**

On September 19, 2013, Wagner filed a "Petition for a Temporary Restraining Order Until Answer of Federal Question," ECF No. 8.  Wagner appears to request that the Court immediately remove the restriction on his access to social media and allow him to use antivirus software that is incompatible with the monitoring software required by U.S. Probation, i.e., relieve Wagner from the requirement that he allow U.S. Probation to monitor his computer usage.

Rule 65 of the Federal Rules of Civil Procedure governs the issuance of both Preliminary Injunctions and TROs. Pursuant to Rule 65, "a temporary restraining order may be granted . . . only if it clearly appears from specific facts shown . . . that immediate and irreparable injury, loss, or damage will result to the applicant."  In its recent opinion in *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 129 S.Ct. 365, 374–76, 172 L.Ed.2d 249 (2008), the United States Supreme Court articulated clearly what must be shown to obtain a preliminary injunction, stating that the plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Id.* at 374. Critically, all four requirements must be satisfied.  *Id.*  Indeed, the Supreme Court in *Winter* rejected a standard that allowed the plaintiff to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Id.* at 375–76.  Where a party seeking a TRO alleges a violation of the First Amendment, "the first factor—likelihood of

21

success on the merits—takes on greater significance." *Occupy Columbia v. Haley*, 866 F. Supp. 2d 545, 552 (D.S.C. 2011). This is because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003) (quoting *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)).

Wagner cannot make the showings required to obtain a TRO. He is unlikely to succeed on the merits for all of the reasons set forth above. Assuming that irreparable injury will certainly occur if Wagner's First Amendment claim is meritorious, irreparable injury is still unlikely because Wagner's claim so obviously lacks merit. The equities clearly do not favor Wagner; the limitations to which he is objecting were put in place because he was convicted of serious crimes. Moreover, nothing in Wagner's sentence indicates that U.S. Probation is required to allow him to use a computer or access the internet while on supervised release, and the restrictions to which Wagner objects are minor compared to the complete prohibition his sentence would allow. Finally, an injunction is not in the public interest, as the restrictions Wagner seeks to have removed were specifically put in place to protect the public. For all of these reasons, the undersigned respectfully recommends that Wagner's motion for a TRO be denied.

## OTHER OUTSTANDING MOTIONS

Beyond the Defendants motions to dismiss, and Wagner's motion for a TRO, several additional motions are outstanding, including:

- Wagner's "Petition for an Immediate Hearing to Hear Constitutional Challenges" (Motion for a Hearing), ECF No. 34, December 27, 2013;

- Wagner's "Petition for a Permanent Freeze of Deadlines" (Motion to Stay), ECF No. 35, December 27, 2013;

- Wagner's "Petition to Serve Defendants by Email" (Motion to Serve Defendants by Email), ECF No. 36, December 27, 2013;

- Wagner's "Petition for the Court to Appoint a Constitutional Attorney" (Motion to Appoint Counsel), ECF No. 44, January 17, 2014;

- Wagner's "Petition for Address to Serve PayComputerMonitoring.com," ECF No. 46, January 17, 2014;

- Wagner's "Petition for Order of Protection", ECF No. 55, February 28, 2014;

- Wagner's "Petition for a Court Order for Release of Evidence," ECF No. 56, February 28, 2014;

- Wagner's "Leave for Depositions from Defendants and Witnesses," ECF No. 61, February 28, 2014;

- Defendants Daugherty, Simmons, and Hampton's Motion to Stay Discovery or For Protective Order, ECF No. 63, April 16, 2014; and

- Defendant La Toshia Spearing's Motion to Stay Discovery, ECF No. 65, May 2, 2014.

If the District Court adopts the recommendation that Wagner's Complaint be dismissed, these motions will be moot.

**CONCLUSION**

Wherefore, it is RECOMMENDED that Defendants' motions to dismiss (ECF No. 30, ECF No. 38, and ECF No. 47) be GRANTED, that Wagner's Complaint be DISMISSED with prejudice for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and *Ashcroft v. Iqbal*, and that his motion for a TRO (ECF No. 8) be DENIED.  Should this recommendation be adopted by the Court, all other outstanding motions will be MOOT.

IT IS SO RECOMMENDED.

_____
WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

July 2, 2014

Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).